# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

BRENDA BETANCOURT-GUADALUPE,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO. 24-1233 (HRV)

## OPINION AND ORDER

### INTRODUCTION

Brenda L. Betancourt-Guadalupe (hereinafter "Plaintiff" or "Ms. Betancourt"), seeks review of the final administrative decision of the Acting Commissioner of Social Security ("the Commissioner") denying her claim for disability benefits under the Social Security Act ("the Act"). The Commissioner filed his brief arguing that the decision should be affirmed because it is based on substantial evidence. After careful consideration of the record, and for the reasons outlined below, the Commissioner's decision is AFFIRMED.

### LEGAL FRAMEWORK

**Standard of Review**

Pursuant to 42 U.S.C. § 405(g), any individual may obtain review of a final decision of the Commissioner. Under said statutory provision, the Court is empowered

"to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." *Id*. In addition, the statute provides that if supported by substantial evidence, the findings of the Commissioner as to any fact, shall be conclusive. *Id*.

A reviewing Court must uphold the decision of the Commissioner as long as the Administrative Law Judge ("ALJ") applied the correct legal principles, and the determination is supported by substantial evidence. *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). The scope of my review is thus limited. I am tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. *See Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000); *see also Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).

To meet the evidentiary benchmark, more than a scintilla of evidence is required. *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018). But the threshold for evidentiary sufficiency is not particularly high; if after looking at the existing administrative record, the reviewing court is persuaded that it contains sufficient evidence to support the Commissioner's factual determinations, the decision is bound to be upheld. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019) (cleaned up). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The ALJ's decision must be reversed, however, if it was arrived at "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**The Five-Step Sequential Evaluation Process**

To be eligible for social security benefits, a claimant must demonstrate that he or she is "disabled" within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). The Act defines disability in pertinent part as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(a) and 1382c(a)(3)(A). The impairment or impairments must be severe enough that "he [or she] is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists [in significant numbers] in the national economy…." *Id.*, § 423(d)(2)*,* § 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1520(a)(1).

The Commissioner follows a five-step evaluation process to determine disability. *See Mills v. Apfel*, 244 F.3d 1, 2 (1st Cir. 2001); 20 C.F.R. § 404.1520(a). These steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id*. The Plaintiff has the burden of proof at the first four steps of the process. *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001).

Step one considers work activity, that is, whether the Plaintiff is currently "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the person is, then she is not disabled under the Act. *Id*.  Step two asks whether Plaintiff has a physical or mental impairment, or a combination of impairments, that is severe and meets the Act's duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). Step three considers the medical severity of the Plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). At this step, if Plaintiff is determined to have an impairment that meets or equals an impairment listed

in 20 C.F.R. pt. 404, Subpt. P., app. 1, and meets the duration requirements, she is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). On the other hand, if the Plaintiff is not found to be disabled at this step, her Residual Functional Capacity ("RFC") is assessed. 20 C.F.R. § 404.1520(a)(4), (e). Once the ALJ determines the RFC, the inquiry proceeds to step four. Step four compares the Plaintiff's RFC to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the Plaintiff can still do her past relevant work, she is not disabled. *Id*. Finally, at step five, the Plaintiff's RFC is considered alongside her "age, education, and work experience to see if [she] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If she can make an adjustment to other work, she is not disabled; if she cannot, she is disabled. *Id*. At this step, it is the Commissioner who has the burden "to come forward with evidence of specific jobs in the national economy that the applicant can still perform." *Freeman v. Barnhart*, 274 F.3d at 608 (*citing Arocho v. Sec'y of Health & Human. Servs*., 670 F.2d 374, 375 (1st Cir. 1982)).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff applied for disability and disability insurance benefits on September 17, 2019, alleging her disability began on November 16, 2018. *See* Transcript of Social Security Proceedings ("Tr."), Docket 12 at 24. (Tr. 19). The claim was initially denied on March 6, 2020, and on reconsideration on September 3, 2020. (*Id*.). On September 22, 2020, Plaintiff moved in writing for a hearing, and on March 3, 2022, a telephone hearing was held presided by ALJ Judith Torres-De Jesus.[1] At the hearing, Ms.

---

[1] The hearing was held via telephone due to the extraordinary circumstances presented by the Coronavirus Disease of 2019 (COVID-19). (Tr. 19).

4

Betancourt was represented by attorney Jose Alfaro on behalf of her main representative, non-attorney Elizabeth Gordon. (*Id.*). Impartial vocational expert Joey Kilpatrick also testified at the hearing. (*Id.*). Additional written evidence was submitted by Ms. Betancourt prior to the hearing, and it was admitted into evidence as part of the record. (*Id.*). I briefly summarize below the ALJ's written decision dated September 28, 2022.

The ALJ determined at Step One of the five-step sequential process that Ms. Betancourt did not engage in substantial gainful activity since the alleged onset date, that is, November 16, 2018. (Tr. 22). At Step Two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine; dermatitis; major depressive disorder severe recurrent without psychotic features; panic disorder without agoraphobia; somatic symptom syndrome; and mild neurocognitive disorder. (*Id.*).

With respect to Step Three, the ALJ concluded that Ms. Betancourt did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically listing 1.15 and 8.05 (Tr. 23). For this particular finding, the ALJ found that the record did not establish medical signs, symptoms, laboratory findings, or degree of functional limitation required to meet or equal the criteria. (*Id.*). She considered Plaintiffs' alleged impairments, but found that medical evidence did not show the presence of an impairment-related physical limitation of musculoskeletal functioning that has lasted or is expected to last at least 12 months, nor medical documentation showing the need of a walker, bilateral canes or crutches, or a wheeled and seated mobility device; an inability to use one upper extremity or both upper extremities to independently initiate, sustain,

and complete work-related activities involving fine and gross movements. (*Id.*). Regarding Plaintiffs' dermatitis, the ALJ concluded that the medical evidence in the record did not demonstrate the existence of extensive skin lesions causing a limitation in the ability to ambulate or use her extremities. (*Id.*).

With respect to Ms. Betancourt's mental impairments, the ALJ determined that she did not meet or medically equal the criteria in listings 12.02, 12.04, 12.07, and 12.06. In so finding, the ALJ considered if Paragraph B criteria was satisfied. To satisfy "Paragraph B" criteria, the mental impairment must result in one extreme limitation[2] or two marked limitations[3] in a broad area of functioning. (*Id.*). The ALJ assessed moderate limitations in all relevant areas. For example, as to understanding, remembering, or applying information, Plaintiff was able to comprehend, memorize brief, straightforward job-related instructions and work process, but Plaintiff's capacity to learn and recall novel, complex occupational concepts and processes efficiently could be adversely affected by the mental impairments. (Tr. 24). Ms. Betancourt alleges difficulty remembering generally and completing tasks, but the evidence showed that she could pay bills, shop, and take care of her personal hygiene and grooming without reminders. *Id*. Also, she was able to provide information about her past work and health without difficulty. (*Id.*).

---

[2] An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. 20 C.F.R. pt. 404, subpt. P. app 1.

[3] A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. *Id*.

Second, with respect to the area of interacting with others, while Ms. Betancourt reported not engaging in social activities and not being able to be around people other than her family, she was nonetheless able to attend church, personally shop in stores, and deal appropriately with authority. Further, she acknowledged having no problem getting along with others and reported having a good relationship with family, neighbors, and friends. (*Id*.).

Third, as to Ms. Betancourt's ability to concentrate, persist, or maintain pace, the ALJ also found she had moderate limitations because she "has the mental capacity to execute short, simple instructions toward the goal of completing job tasks consisting of recurrent, uniform steps and can make appropriate decisions during such work activity." (Tr. 24-25). Plaintiff claimed to have limitations in concentrating generally, but she acknowledged, among other things, being able to manage a savings account and follow written instructions. (Tr. 25). The record shows she spends time watching TV and reading. (*Id*.).

Lastly, in the area of adapting and managing oneself, the ALJ once again determined that Ms. Betancourt had moderate limitations. Even though she had asserted having difficulties handling anxiety and panic attacks, she has been described as cooperative and has not required psychiatric hospitalizations. (*Id*.).

Based on the above-outlined findings, the ALJ concluded that Plaintiff's mental impairments did not cause at least two marked limitations or one extreme limitation, and, thus, Paragraph B criteria was not satisfied. (*Id*.). The ALJ likewise considered if Paragraph C criteria was satisfied, but the evidence fell short of establishing the criteria. (*Id*.).

Next, and prior to moving to Step Four of the sequential process, the ALJ concluded that Plaintiff had an RFC

> to perform light work as defined in 20 CFR 404.1567(b) except she can: lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. The claimant can sit for six hours in an eight-hour workday. She can stand and/or walk for six hours in an eight-hour workday. The claimant can climb ramps and stairs frequently, never climb ladders, ropes, or scaffolds, balance frequently, occasionally stoop, kneel and crouch but never crawl. The claimant can never work at unprotected heights, can work moving mechanical parts frequently, and operating a motor vehicle occasionally. She can work exposed to extreme cold and extreme heat occasionally, and work in vibration occasionally. From a mental standpoint, the claimant can understand, remember and carryout instructions for simple, routine tasks; use judgment and deal with changes in the work setting for simple work-related decisions; is able to interact with supervisors and coworkers frequently and with the public occasionally.

(Tr. 25-26).

In reaching this conclusion, the ALJ considered all of Plaintiffs' symptoms to the extent they are consistent with the objective medical evidence as required by 20 C.F.R. 404.1529 and Social Security Ruling ("SSR") 16-3p, as well as medical opinions and prior administrative medical findings as mandated by 20 C.F.R. 404.1520c. (Tr. 26). In following the required two-step process (first determining if the physical or mental impairments could reasonably be expected to produce the pain and/or symptoms alleged, and, second, evaluating the intensity, persistence, and limiting effects of said symptoms to determine the extent to which they limit Plaintiff's work-related activities), the ALJ concluded after a thorough and detailed explanation (Tr. 26-31), that the RFC assessed for Ms. Betancourt was supported by the objective medical evidence and medical opinions that form part of the record. (Tr. 31). Furthermore, the ALJ concluded that

Plaintiff's own reports regarding functioning—for instance—that she was able to prepare meals, perform some household chores, drive short distances, personally shop in stores, manage funds, pay bills, watch TV, read, spend time with family, attend church, follow written instructions, and take care of her son, all suggested a capacity to perform work within the RFC determined. (*Id.*).

The ALJ found Ms. Betancourt was unable to perform any past relevant work (Step Four), but considering her age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy she could perform (Step Five) such as office helper, mail sorter, and shipping and receiving weigher. (Tr. 31-33). Accordingly, the ALJ held that Ms. Betancourt was not disabled under the Act. (Tr. 33).

On November 23, 2022, Plaintiff sought review of the ALJ's decision before the Appeals Council. On March 25, 2024, the Appeals Council denied her request for review. On that date, the ALJ's decision became the Commissioner's final decision. (Tr. 1-8).

On May 24, 2024, Ms. Betancourt filed an application to proceed in forma pauperis and her social security complaint before this Court. (Docket Nos. 1 and 2). On the same date, the presiding District Judge granted her leave to proceed in forma pauperis (Docket No. 4), and on May 30, 2024, ordered the Clerk of Court to appoint counsel from the pro bono panel. (Docket No. 7). Attorney Louis A. De Mier-LeBlanc was appointed. (Docket No. 9).

On July 7, 2024, this case was formally referred to the undersigned magistrate judge for all further proceedings including the entry of judgment. (Docket No. 10). Later, on July 22, 2024, the social security transcript was filed. (Docket No. 12). Plaintiff's social

security brief was filed on August 19, 2024 (Docket No. 13), and the Commissioner's on September 17, 2024. (Docket No. 17).

## DISCUSSION

Ms. Betancourt argues that the ALJ erred in her RFC assessment. She specifically takes issue with the ALJ's interpretation of the medical evidence, and the conclusions reached to formulate an RFC to perform light work. She claims it was an error to make such determinations without having a physical medical advisor present at the hearing (Issue 1). She also states that the RFC determination was impacted by the ALJ's erroneous evaluation of her subjective complaints of pain and restrictions in movement (Issue 2). Lastly, Plaintiff launches an attack on the ALJ's finding at Step Five regarding the jobs that she can perform given her RFC by challenging hypothetical questions posed to, and the sources consulted by, the vocational expert (Issue 3).

The Commissioner responds that substantial evidence supports the RFC assessment. The Commissioner's position is that the ALJ was not required to obtain another medical opinion, that subjective complaints regarding pain were properly evaluated, and that there was no error in the Step Five determination that Plaintiff could perform jobs existing in significant numbers in the national economy. The Commissioner also avers that Plaintiff's arguments are at bottom a request to this Court to reweigh evidence, something that a reviewing court is not supposed to do. I discuss the three issues in turn.

**Physical Medical Advisor**

Without much elaboration or citation to supporting authority, Plaintiff argues that the ALJ erred in not having a physical medical advisor present at the hearing. It is

10

undisputed that ALJs are granted considerable leeway in deciding whether to seek additional evidence, including evidence from medical experts. *See* 20 C.F.R. § 404.1520b(b)(1)-(2). Failure to seek additional evidence will be deemed error only in cases where there are "gaps in the evidence necessary to a reasoned evaluation of the claim." *Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir. 1991) (*quoting Currier v. Sec'y of Health & Human Servs.*, 612 F.2d 594, 598 (1st Cir. 1980)). "There is no requirement that an ALJ take testimony from a medical expert." *Guzman-Perez v. Comm'r of Soc. Sec.*, No. 18-cv-1209 (MEL), 2019 WL 5858159, 2019 U.S. Dist. LEXIS 195047, at *12 (D.P.R. Nov. 8, 2019); *see also Gonzalez v. Saul*, No. 19-cv-2004 (CVR), 2021 WL 2887776, 2021 U.S. Dist. LEXIS 128706, at *18 n.5 (D.P.R. July 8, 2021) (rejecting the exact same argument made by the same attorney who happens to be the attorney in this case.).

Here, the record shows that the ALJ relied on several evidentiary sources to formulate Plaintiff's physical RFC, including the opinions of state agency medical consultants that found Ms. Betancourt could performed a range of medium work. The Commissioner correctly points out that the ALJ rejected in part these opinions, even though the record perhaps justified adopting them in their entirety, because the ALJ found—favorably to her—that a more restrictive RFC assessment was warranted. *See Smith v. Berryhill*, 370 F. Supp. 3d 282, 289 (D. Mass. 2019) (plaintiff failed to specify how she was prejudiced by a more restrictive RFC.).

As to the claim of not having a physical medical advisor present at the hearing, and as noted above, the Code of Federal Regulations gives ample discretion to the ALJs in deciding if additional evidence is necessary. It is the ALJ who is tasked with deciding

11

the best way to resolve an inconsistency or insufficiency in the evidence. *See* 20 C.F.R. § 404.1520b(b)(2); *see also Gonzalez v. Saul*, 2021 U.S. Dist. LEXIS 128706, at *18. Ms. Betancourt utterly fails to show that the ALJ abused said discretion or that there were gaps in the evidence that needed to be filled. This alleged error did not occur.

**Evidence of Pain**

"Pain can constitute a significant non-exertional impairment." *Nguyen*, 172 F.3d at 36. But the Act specifically provides that a claimant will not be considered disabled unless she furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of the evidence of a claimant's subjective statements about her symptoms, including pain, and determine "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence." *See* SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3). The ALJ may not disregard a claimants statements about the intensity, persistence, and limited effects of symptoms "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms." SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 4790249, at *49465.

Moreover, in evaluating the intensity, persistence, and limiting effects of a person's symptoms, SSR 16-3p requires that the ALJ consider, among other things, a claimant's daily activities. 2016 SSR LEXIS 4, 2017 WL 5180304, at *7. In the case of Ms. Betancourt, the ALJ considered her reported daily activities as follows: "she is able to prepare meals, perform some household chores, drive short distances, personally shop

in stores, manage funds, pay bills, watch TV, read, spend time with family, attend church, follow written instructions, and take care of her son." (Tr. 31; Exhibits 6E; 12E; and 5F/2). The inferences drawn by the ALJ from the self-reported activities that she could perform light work are not unreasonable. And it should be noted that the ALJ here considered Plaintiff's daily activities as one of several factors in reaching her conclusions regarding her subjective complaints; it was not the sole factor. The ALJ also found the subjective complaints to be inconsistent with the objective medical evidence and the medical opinions. She was careful to explain her reasoning in detail.

With respect to physical symptoms, Ms. Betancourt testified that pain in her extremities, like hands, wrists, feet, arms, and back, were the symptoms she believed were preventing her from working. (Tr. 49). She also testified experiencing numbness, cramps, and tingling sensations, as well as the tachycardia and symptoms related to the thrombocytopenia condition. (Tr. 57). In not giving determinative weight to these subjective complaints, the ALJ correctly assessed the evidence in the record as follows.

As to tachycardia and thrombocytopenia symptoms, the record shows that in 2018, Plaintiff was evaluated after experiencing palpitations. An echocardiogram performed revealed normal left ventricle size, wall thickness, and systolic function, with an ejection fraction greater than 55%. (Tr. 22; Ex. 2F). A Holter summary report showed evidence of many episodes of sinus tachycardia, but additional evidence of follow-up treatment was not submitted by Plaintiff. There is only record of two follow-up visits during 2018 with no evidence of complications. Plaintiff disclaimed having been treated or hospitalized for said condition. (Tr. 22) Moreover, Dr. Sandra R. Rodriguez mentioned the condition was controlled. *Id.*

As for pain in her extremities, like hands, wrists, feet, arms, and back, the ALJ concluded that those physical impairments could reasonably expected to interfere with her ability to do more than light effort. (Tr. 26). For instance, the record established a history of lumbar spine disorder by an MRI from 2015, revealing disc protrusions in some levels and mild facet joint hypertrophy in the lower lumbar spine. However, Ms. Betancourt continued working with these conditions until 2018. (Tr. 27; Ex. 2F). In addition, evidence in the record showed chronic back pain, but it was not until July 2020 that Plaintiff sought treatment with chiropractor Dr. Julio Cay. (Ex. 9F).

As discussed by the ALJ, Dr. Cay's progress notes showed lumbar pain complaints, thoracic and cervical pain that occurred after lifting an object in June 2020. (Tr. 27). During her physical examination, Ms. Betancourt reported pain in the bilateral lumbosacral spine-sacral joint with increased sensation and moderate to severe muscle spasms, deep tendon reflexes were normal, and active range of motion of the cervical and thoracolumbar areas was only minimally reduced. (Tr. 27). In addition, Dr. Cay referred in his notes to a radiographic finding of mild to moderate degenerative disc disease, but after his evaluation, he found the Plaintiff was of fair health and was expected to make fair progress and recovery with some residuals and found there were no contraindications for gentle conservative chiropractic treatment. (*Id*.; Ex. 9F). After completion of treatment, Plaintiff still reported discomfort and pain in the lumbar, thoracic, and cervical regions. A physical examination showed restrictions/subluxations, pain/tenderness, pelvic deficiency, muscle spasms, and moderately reduced range of motion. Nevertheless, Dr. Cay stated that Plaintiff was showing modest improvement and meeting expectations. He recommended that she continue treatment to reach the

projected goals. (*Id*.). Subsequent progress notes showed similar signs and symptoms. (Exs. 9/F46-56: 11F4-5). However, by November 2021 and later in February 2022, Plaintiff reported improvement of symptoms even though lumbar pain was still rated 6 on a scale of 10, thoracic and cervical pain had decreased to 5 on a scale of 10, and Plaintiff stated her activities of daily living had improved because of less pain. (*Id*.).

The ALJ also took into consideration the consultative examination performed by Dr. Sandra Rodriguez Rosario on January 23, 2020. The examination reported trophic changes, that is, plaque psoriasis in both elbows and knees, and limited range of motion of the back and neck. However, Plaintiff had normal muscle tone, no evidence of atrophy, 5/5 muscular strength in all extremities, and normal sensory and reflex functions. (Tr. 27) (*See also*, Ex. 4F). In addition, even though Plaintiff reported lumbar and calf pain, her gait was normal, and she was walking unassisted. Further, knees and straight leg raising tests were negative and Plaintiff was able to get on and off the examination table without help. Imaging studies of the lumbosacral spine showed evidence of a mildly straightened lordotic curve, suggesting paravertebral muscle spasm, without evidence of destructive lesions, fracture, or subluxation, and the bony structures and the disc spaces were well preserved. *Id*.

Relevantly, a subsequent evaluation dated August 19, 2020, performed once again by consultative examiner Dr. Rodriguez-Rosario, showed the presence of psoriasis plaques in both elbows and knees, a normal physical examination, muscular strength in all extremities, a full range of motion in all joints, a normal unassisted gait, full hand functionality, no sensory deficits or abnormal reflexes, and knee and straight leg tests negative. Plaintiff was also able to walk in a straight line and get on and off the

examination table without difficulties. (Tr. 28) (*See also*, Ex. 7F). Imaging studies of the wrists showed no evidence of destructive bones lesions or acute fracture dislocation, and articular spaces and soft tissues were well preserved. *Id.*

Following the above-outlined and detail description of the medical evidence in the record, including consideration of Plaintiff's subjective complaints, the ALJ concluded, correctly in my view, that her physical impairments could reasonably result in some functional restrictions but were not profoundly limiting. Treatment for these conditions commenced after the alleged onset date and was conservative in nature. Plaintiff did not require physical therapy, pain management treatment or any kind of orthopedic treatment, let alone surgery or hospitalizations. Simply put, all medical opinions and medical records support the ALJ's conclusion that Plaintiff had the capacity to perform work within the determined RFC. Given the substantial evidence standard, this conclusion can hardly be deemed error. *See Coskery v. Berryhill*, 892 F.3d 1, 7 (1st Cir. 2018); *see also Berrios-Lopez v. Secretary of HHS*, 951 F.2d 427, 429 (1st Cir. 1991).

**Step Five Finding**

Turning now to Plaintiff's final claim of error, Ms. Betancourt challenges two aspects of the ALJ's Step Five determination. First, she contends that the hypothetical questions asked of the VE were "unspecific and suggestive." (Docket No. 13 at 7). Second, Plaintiff disagrees with the finding regarding the number of jobs she could perform given her characteristics and RFC. The latter challenge is rather vague and underdeveloped but appears to criticize the source of information used by the VE to arrive at the number of jobs existing in the national economy. It should be noted that these challenges were not raised at the hearing before the ALJ and are therefore waived. *Cameron v. Berryhill*, 356

F. Supp. 186, 192 (D. Mass. 2019) (*citing Mills v. Apfel*, 244 F.3d at 8). Even if not waived, they should be rejected for lack of merit.

In her written decision, the ALJ found that Ms. Betancourt was not able to perform her past relevant work of secretary and administrative clerk. (Tr. 31). The ALJ concluded, however, that based on her age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as office helper, mail sorter, and/or shipping and receiving weigher. (Tr. 32-33). According to the testimony of the VE, whose opinions were adopted by the ALJ and whose qualifications are undisputed (Tr. 33), these jobs exist in the national economy respectively in the following numbers: 105,000, 96,000, and 124,000. (Tr. 60-61). The ALJ held that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT") and Selected Characteristics of Occupations ("SCO"). (Tr. 33).

I quickly dispose of the claim regarding the hypothetical questions. This is a claim that is derivative of the challenge to the RFC determination that I have already rejected. Accordingly, the appropriateness of the hypothetical questions posed to the VE as a sub issue of the RFC determination is unavailing. *See Lianabel G.N. v. Comm'r of Soc. Sec.*, No. 24-1016 (GLS), 2025 WL 957732, 2025 U.S. Dist. LEXIS 62966, at *21 (D.P.R. Mar. 31, 2025) (*quoting Bowden v. Colvin*, No. 13-cv-201-GZS, 2014 U.S. Dist. LEXIS 57695, 2014 WL 1664961, at *4 (D. Me. Apr. 25, 2014)). In any case, it has been held that "[f]or a vocational expert's opinion to constitute substantial evidence, the testimony regarding an individual's ability to perform jobs in the national economy must come in response to a hypothetical question that accurately describes the claimant's impairments. *Johnson v.*

*Colvin*, 204 F. Supp. 3d 396, 415 (D. Mass. 2016) (*citing Arocho v. Sec'y. of Health & Human Servs.*, 670 F.2d at 375); *see also Cohen v. Astrue*, 851 F. Supp. 2d 277, 284 (D. Mass. 2012)). Here, the ALJ's hypothetical questions were accurate and based on the impairments that the record supported. Unlike the ones posed by Plaintiff's representative that were very broad, unfocused, and did not align with the evidence in the record.[4]

---

[4] The following exchange at the hearing before the ALJ illustrates the point:

> ATTY: OK, it would be -- let me look at something here. OK, if the person didn't even have the skill or functional capacity to remember work processes nor to remember and carry out short instructions, and if she also didn't have the ability to hold attention for segments of two hours, nor does she have an ability to maintain regular attendance and be punctual at work. She's unable to maintain an ordinary routine without supervision, nor is she able to work with or in proximity to other people without being distracted. She doesn't have an ability to make simple work decisions, but not in a way that is competitive. She also lacks the functional capacity to complete a normal workday or a normal work week without interruption due to psychological symptoms. She's also unable to maintain a consistent pace without an unreasonable number of long rest periods. She's unable to ask questions or request help. She can't take instructions nor respond appropriately to criticism from supervisors. She can get along with coworkers without distracting them, but not in a competitive way. Or let's say, occasionally. She also can't respond to -- she has no ability to respond to changes in work routines, and she can't deal with normal stress. And she can't be aware of normal work hazards and take appropriate precautions. She's also unable to make plans or set goals. She can't cope with the stress of even skilled or semi-skilled work. She can't work with the public. She can't maintain appropriate social behavior. She can't adhere to basic standards of cleanliness and neatness. She can't travel to unfamiliar places nor use public transportation. Could that person do the jobs they did before, or any of the jobs you mentioned, or any other jobs?
>
> VE: None, Counsel.

(Tr. 63). Clearly, the restrictions provided by Ms. Betancourt's representative in his hypothetical are not consistent with the objective evidence in the record. The ALJ was, therefore, justified in rejecting them as she did at Tr. 33 ("I reject the hypothetical questions posed by the representative, as the objective persuasive evidence of record does not support them.").

18

The second aspect of this claim of error fares no better, again, assuming that it was properly preserved. The ALJ correctly concluded that the VE's opinion regarding the number of jobs was supported by the sources consulted, as well as his education and experience. Nothing more is needed for me to be able to hold that the finding is backed by substantial evidence. *See Amanda v. Kijakazi*, No. 22-cv-00183-JAW, 2023 WL 1860174, 2023 U.S. Dist. LEXIS 21825, at *16 (D. Me. Feb. 9, 2023) (noting that a VE is not limited to a particular source to support his or her opinion and that the opinion can be based at least in part on experience.); *see also Gonzalez v. Saul*, 2021 U.S. Dist. LEXIS 128709, at *19-21.

## CONCLUSION

In view of the above, the decision of the Commissioner is hereby AFFIRMED.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 6th day of May 2025.

S/Héctor L. Ramos-Vega<br>
HÉCTOR L. RAMOS-VEGA<br>
UNITED STATES MAGISTRATE JUDGE